**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 04-78994-JEM |
| | ) | |
| MONTELL D. JORDAN and | ) | |
| KRISTEN JORDAN, | ) | CHAPTER 7 |
| | ) | |
| Debtors. | ) | JUDGE JAMES MASSEY |
| | ) | |

**REPORT OF SALE**

COMES NOW S. Gregory Hays, the Chapter 7 Trustee in the above-captioned matter, and files this Report of Sale pursuant to Bankruptcy Rule 6004(f), and shows the Court as follows:

1.

The Trustee sold property of the estate known as Debtors' entire ownership interest in the Compositions and Related Music Publishing Assets on August 31, 2007 for $393,000.00, as ordered and approved by the Court on August 29, 2007.

2.

Attached hereto is the Asset Purchase Agreement and Exhibit A to the Asset Purchase Agreement that lists the property sold, the name of the purchaser and the price received.

Respectfully submitted this ___30___ day of January, 2008.

_____
S. Gregory Hays
Chapter 7 Trustee

Hays Financial Consulting, LLC
3343 Peachtree Street, N.E.
Suite 200
Atlanta, Georgia 30326-1420
(404) 926-0060

<u>ASSET PURCHASE AGREEMENT</u>

This Purchase and Sale Agreement ("Agreement") is entered into as of June ___, 2007 (the "Effective Date") by and between Anthem Music & Media Fund, LLC d/b/a Kohaw Music, Inc. (ASCAP) and its affiliate, The Bicycle Music Company (collectively, "Anthem" or "Purchaser"), 449 S. Beverly Drive, Suite 300, Beverly Hills, CA 90212, on the one hand, and S. Gregory Hays ("Trustee") solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Montell and Kristin Jordan (the "Estate" or "Seller"), c/o S. Gregory Hays of Hays Financial Consulting, LLC, 3343 Peachtree Road NE, Suite 200, Atlanta, GA 30326, on the other hand. This Agreement is subject to approval by the Bankruptcy Court (as defined herein) and no payment shall be due to Seller prior to such approval.

Purchaser and Seller (collectively, the "Parties"), hereby acknowledge that Purchaser desires to acquire and Seller desires to sell, on the terms and conditions set forth in this Agreement, the rights in all territories of the world (the "Territory") in and to Seller's entire ownership interest in the Compositions (as defined below) and Related Music Publishing Assets (as defined below) (collectively, the "Assets"). Now, therefore, Purchaser and Seller agree as follows:

1.    <u>Definitions</u>.

(a)    "Bankruptcy Estate" and "Bankruptcy Estate of Montell and Kristin Jordan" shall herein mean any and all interest in the Assets (as defined herein) as of the Petition Date, which have not been sold, liquidated, transferred, or otherwise disposed of pursuant to Bankruptcy Court order (Trustee is not aware of any such transfer) including, without limitation, any and all interests in Mo' Swang Music (ASCAP) ("MSM") and Hudson Jordan Music (ASCAP) "HJM");

(b)    "Compositions" shall herein mean all of Seller's interests in all musical compositions or portions or contents thereof, owned or controlled, in whole or in part, by Seller as of the date of the filing of the Chapter 7 Bankruptcy Petition of Montell and Kristin Jordan (as defined below) (collectively, "Seller's Interests"), it being acknowledged by the Parties that Seller's Interests in each of the Compositions are derived from a combination of (A) the authorship share of all compositions composed by Montell Jordan (the "Primary Writer") during his career and (B) various other shares of various compositions composed or co-composed by other songwriters ("Secondary Writers") acquired by Seller's predecessors-in-interest (including, without limitation, HJM and MSM) through various songwriter agreements ("Songwriter Agreements");

(c)    Seller's Interests specifically include, without limitation, the titles, lyrics and music thereof, any derivative works thereof, any arrangements, adaptations and translations thereof, the copyrights therein and thereto and all renewals, extensions, continuations, restorations and reversions of such copyrights (whether vested, contingent or inchoate and whether such renewals, extensions, continuations, restorations and reversions

1

are now in existence or come into existence as a result of future legislation or the interpretation thereof to the extent permitted by law), and all rights to secure such renewals, extensions, continuations, restorations and reversions of copyright to the extent permitted by law, and all other rights therein and thereto, whether now or hereafter known, throughout the universe, as well as all unencumbered rights to administer and the right to receive, collect and retain any and all worldwide income derived from the use or exploitation in the Territory of any of the foregoing and all claims and demands accrued or to accrue with respect thereto (collectively, "Income") including, without limitation:

(i)    with respect to Compositions composed or co-composed by the Primary Writer, both the Writer's Share and Publisher's Share of all such Income (as such terms are defined below); and

(ii)    with respect to Compositions composed or co-composed by Secondary Writers, that certain share of the Publisher's Share of all such Income initially acquired by HJM or MSM under each applicable Songwriter Agreement.

(d)    The "Compositions" specifically include all musical compositions listed on Exhibit A in the ownership percentages set forth on Exhibit A inclusive of the Publisher's Share percentages designated by the letter "P" and the Writer's Share percentages of Primary Writer designated by the letter "W" and, to the extent, if any, that any compositions written by the Primary Writer prior to the Closing Date are not set forth on Exhibit A, Primary Writer's authorship interest in each such composition shall nevertheless be deemed a Composition hereunder and subject to all of the terms and conditions hereof applicable to the Compositions. Without limiting the foregoing, Exhibit A shall include, with respect to each Composition, the title, creation date, copyright registration date, copyright registration number, the Primary Writer's authorship share, any Secondary Writers' authorship share, Seller's ownership share, and the names of any other owners and their respective shares of the Composition.

(e)    "Net Income" means Income less costs that third parties are entitled to retain prior to allocating gross income under the applicable agreements (e.g., Harry Fox Agency commissions, administration costs, etc.).

(f)    "Writer's Share" means fifty percent (50%) of Net Income that is customarily paid to the writers of composition absent a written agreement to the contrary, and "Publisher's Share" means fifty percent (50%) of Net Income that is customarily paid to the publishers of a composition absent a written agreement to the contrary.

(g)    "Related Music Publishing Assets" shall herein mean:

(i)    any and all rights (including, without limitation, all rights to receive money) conveyed to or otherwise currently enjoyed by Seller under all agreements, licenses, assignments and other documents pertaining to the publishing, ownership, control and/or exploitation of any or all of the Compositions (or other Assets) and/or any or all proceeds

thereof, including, without limitation:

(a)    all mechanical licenses, synchronization licenses, print licenses, licenses to foreign publishers, and other licenses or agreements granting to any third party the right to exploit or use any of the Compositions in the Territory whether before or after the Closing Date (which collectively shall be referred to as the "Licenses");

(b)    all copublishing, subpublishing, and administration agreements with third parties that relate to any of the Compositions;

(c)    all agreements with any performing rights societies and collection agencies affecting any of the Compositions;

(d)    all royalty participation agreements related to any of the Compositions;

(e)    all individual song agreements and songwriter agreements to the extent applicable to each of the Compositions;

(f)    all assignments to Seller (or assignments to any of Seller's predecessors-in-interest) of any kind relating to any of the Compositions including, without limitation, assignments of copyrights, assignments of the right to renew or extend copyrights, and the assignments of any and all other contract rights;

(g)    all agreements or other documents not otherwise specified that pertain to the transfer of copyright renewal rights in any of the Compositions;

(h)    all agreements or other documents not otherwise specified that convey to Seller (or any of Seller's predecessors-in-interest) the right to acquire, right of first refusal or negotiation, matching rights, put or sell rights, or any options with respect to the acquisition of or the participation in any of the results and/or proceeds of any Composition or other contract right that is, or may be, related to or utilized in connection with any of the Compositions or other Assets;

(i)    all other agreements or other documents that relate in any way to the acquisition or disposition of any or all of the Compositions (or other Assets) not in the ordinary course of business; and

(j)    all amendments to all of the agreements, licenses, assignments and other documents described in this paragraph I(A)(i) of this Agreement (collectively, the "Asset Agreements"); and

(k)    all existing or potential causes of action and claims brought or which may be brought against any third parties including, without limitation, those for infringement or underpayment or nonpayment of royalties with respect to any of the

3

Compositions and/or any of the Asset Agreements and the right of substitution in connection therewith ("Composition Claims"); provided, however, that Seller shall retain the right to recover from Debtors and third parties, exclusive of the Buyer, any and all royalties, commissions and monies that have heretofore been paid to Debtors (as defined below) or third parties exclusive of the Buyer, prior to the Effective Date in violation of the terms and conditions of the Bankruptcy (as defined below), which may be recoverable pursuant to 11 U.S.C. §549 and/or applicable state fraudulent conveyance/transfer laws; and

(l)    copies of all Asset Agreements and administrative documents pertaining to the Asset Agreements and the Compositions including, without limitation:

(m)    all song and copyright files for each Composition (the "Song Files") including, without limitation, a list of the full names, current mailing addresses and social security numbers and tax identification numbers for each of the songwriters and publishers of each of the Compositions (including, for the purpose of this subparagraph only, the songwriters and publishers of those portions of said compositions not composed by Primary Writer or a Secondary Writers);

(n)    all notices, society registrations, certificates of copyright and renewal copyright registrations, and index and copyright cards in the possession, custody or control of Seller concerning in any way any of the Compositions;

(o)    all other administrative materials relating to the Compositions in Seller's possession, under Seller's control, or which Seller can acquire through reasonable efforts;

(p)    all other documents of any kind that provide evidence of Seller's chain of title to the Compositions (and other Assets);

(q)    copies of all accounting and bookkeeping records and correspondence files in the possession, custody or control of Seller concerning the Compositions, including, but not limited to, income, revenue, receipts, accounts receivable, royalties, advances and Composition Claims;

(r)    all other Schedules as defined in this Agreement; and

(s)    all of Seller's standard forms of contracts for licenses, songwriters, administration, subpublishing, copublishing and copyright acquisitions;

(t)    all registered trademarks and fictitious business names pursuant to which Seller, HJM and/or MSM conducts or conducted business and all rights to use such trademarks and fictitious business names ("Fictitious Name and Trademark Rights") and all good will associated therewith; and

4

(u)    all promotional and musical material pertaining to the Compositions in Seller's possession or which Seller can obtain through reasonable efforts ("Musical Materials") including, without limitation, the following:

(v)    copies or photos of awards and certificates for Anthem's reference and promotional use;

(w)    copies of materials used with regard to printed editions of the Compositions and any inventory of printed editions;

(x)    copies (including CD-R copies) of phonorecords embodying the Compositions;

(y)    copies of printed editions of the Compositions including any inventory of printed editions of the Compositions; and

(z)    copies of demonstration recordings, commercially released recordings or other recordings of the Compositions; and

(h)    "Closing Date" shall herein mean the later of that date upon which (A) Anthem receives four (4) fully executed and notarized originals of this Agreement together with fully executed and notarized assignments of copyright required by the terms and conditions hereof, or (B) Anthem receives a conformed copy of the Bankruptcy Court's (as defined below) Final Order approving the full execution, performance and implementation of this Agreement, and authorizing the sale of the Assets free and clear of all liens, interests, claims and encumbrances ("Approval Order"). "Final Order" shall mean an order that has become final and not subject to timely notice of appeal and not subject to a timely motion under Federal Rule of Civil Procedure 59 as made applicable to the Chapter 7 Case by Bankruptcy Rule 9023, or as to which any such appeal or motion for rehearing or reconsideration has been resolved by the highest court to which such appeal could be taken or by which such motion for rehearing or reconsideration could be heard. Trustee will seek a waiver of the ten day stay under Federal Rule of Bankruptcy Procedure 6004(g), in order to have the Approval Order become effective immediately; but in the event such a waiver is denied, the Approval Order will be deemed effective at the end of the ten day stay period.

2.    Representations and Warranties of Seller and Debtor.

Seller represents and warrants to Anthem, as follows:

(a)    On November 12, 2004, ("Petition Date") Montell D. Jordan and Kristin Jordan ("Debtors") filed a voluntary petition for relief (the "Bankruptcy Petition") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Georgia ("Bankruptcy Court"). A copy of the Bankruptcy Petition and all exhibits and schedules and amendments thereto are attached hereto as Exhibit B;

5

(b)     On May 5, 2006, Debtors filed a motion (the "Conversion Motion") requesting that the case be converted to a case under Chapter 7 of the Bankruptcy Code. The Conversion Motion was granted by the Bankruptcy Court on June 14, 2006, and a copy of the Conversion Motion, Order Approving Conversion and the Notice of Appointment of Trustee. A copy of all exhibits and schedules thereto are attached hereto as Exhibit C. On June 15, 2006, S. Gregory Hays was appointed as the Interim Trustee and continues to serve as permanent Trustee;

(c)     S. Gregory Hays is the duly qualified, acting, and appointed Chapter 7 Trustee for the Estate (the Bankruptcy Petition, Conversion Motion, appointment of the Trustee and all related proceedings shall be referred to herein collectively as the "Bankruptcy").Under the Bankruptcy Code, the Trustee, subject to Bankruptcy Court approval, has the authority to sell, liquidate, dispose of and administer the Bankruptcy Estate.  Trustee is not required to obtain Debtors' approval when Trystee administers the Bankruptcy Estate.

(d)     Trustee acknowledges  that the Bankruptcy Estate has not been sued or named as a party to any litigation seeking to cancel ort rescind any Asset Agreement based upon a claim of a breach of any provision thereof.

(e)     Seller is not required to obtain the approval or consent of any person or entity, other than the Bankruptcy Court, prior to the execution or delivery of this Agreement or any documents or instruments Seller may be required to execute in order to comply with this Agreement. This Agreement and each document or instrument Seller may be required to execute in order to comply with this Agreement is hereby deemed to be legal, valid and binding upon Seller and enforceable in accordance with its terms, subject to Bankruptcy Court approval.

(f)     Anthem shall not be required to make any payments of any nature or amount to acquire the Assets, except payment of the Final Purchase Price (as defined below) and the assumption and payment when due of the liabilities assumed by Anthem under paragraph 5 hereof, except as set forth herein.

3.     <u>Representations and Warranties of Anthem</u>.

Anthem represents and warrants to Seller, as follows:

(a)     Anthem is not a party to or bound by any judgment, order, writ, injunction, award or decree of any court, arbitrator, government agency or instrumentality that would prevent the execution or performance of this Agreement or the transactions contemplated hereby or adversely affect Anthem's ability to perform its obligations hereunder. The execution, delivery and performance of this Agreement by Anthem and the consummation by Anthem of the transactions contemplated hereby are not prohibited by and will not violate or constitute a breach of any contract, agreement, indenture or other document to which Anthem is a party or that is binding upon Anthem or

6

any material warranty, representation, or covenant contained therein. The execution, delivery and performance of this Agreement by Anthem and the consummation by Anthem of the transactions contemplated hereby are not prohibited by and will not violate any federal, state or local law, rule or regulation or any provision of Anthem's bylaws.

(b)    Anthem is a limited liability company duly organized, validly existing and in good standing under the laws of Delaware and has all necessary right, power, legal capacity and authority, and all necessary corporate action on the part of Anthem and its shareholder(s) has (have) been duly and validly taken, to purchase the Assets as provided herein; and to effectuate the execution and delivery of this Agreement, the execution and delivery of all other documents or instruments contemplated hereby, and the performance of and compliance with the terms, conditions and obligations hereof and the transactions contemplated hereby. Except for the approval of the Bankruptcy Court, no approvals or consents of any persons or entities other than Anthem are necessary in connection with Anthem's execution, delivery and performance of this Agreement and such other documents as Anthem may be required to execute hereunder. This Agreement and each document or instrument contemplated hereby is and shall be legal, valid and binding upon Anthem and enforceable in accordance with its terms.

4.    Agreement to Transfer the Compositions and Other Publishing Assets.

On the Closing Date, effective as of 12:01 a.m., Seller sells, assigns, conveys and transfers, and shall deliver to Anthem, and Anthem shall purchase from Seller, all of Seller's rights, title and interests (whatever they may be, whether existing, contingent, expectant or otherwise) in the Territory in and to the Assets, free and clear of all liens, claims, encumbrances and interests including the following:

(a)    all copyrights and the rights to and under copyright in the Compositions, and any other rights relating to the Compositions now known or that may hereafter be recognized or come into existence, throughout the Territory, under applicable laws, treaties, regulations and directives now or hereafter enacted or in effect;

(b)    all of Seller's interest in renewals and extensions of the copyrights in the Compositions, if any, and Seller's interest in all rights to secure renewals and extensions of the copyrights in the Compositions, if any, throughout the Territory, under applicable laws, treaties, regulations and directories now or hereafter enacted or in effect and to the extent permitted by law;

(c)    all of Seller's rights to publish, administer, exploit in any and all media of whatsoever nature, whether now known or hereafter devised, deal in, transfer or otherwise dispose of the Compositions or any of them or any right therein throughout the Territory, and to collect all income, compensation or consideration of whatsoever nature arising out of the exercise of the foregoing rights;

7

(d)    all of Seller's interests in all of the Related Music Publishing Assets;

(e)    all of Seller's right to receive performance credits, monies and other payments from performing rights societies in the Territory with respect to the Assets;

(f)    all of Seller's interests in all of the Fictitious Name and Trademark Rights;

(g)    all of Seller's rights to use the names and likenesses of the Primary Writer and the Secondary Writers for the purposes of advertising and trade in connection with the use and exploitation of the Compositions in the Territory and for so-called "institutional advertisements" for buyer's business to the extent set forth in the Asset Agreements.

5.    <u>Purchase Price Bidding Process and Bankruptcy Court Approval</u>.

(a)    In consideration of the sale of the Assets as herein contemplated, and in reliance upon the premises, covenants, representations, warranties, agreements and obligations contained herein, and subject to the deductions, terms and conditions contained herein, Anthem agrees to pay to Seller the sum of Three Hundred Ninety Three Thousand Dollars ($393,000.00), as the "Initial Purchase Price" for the sales, transfers and assignments made hereunder, unless a Third Party Bidder (as defined below) shall become the Final Purchaser (as defined below) as a result of the bidding process (the "Bidding Process") at the Sale Hearing (as defined below). The "Sale" shall herein mean the sale of the Assets as herein contemplated to either Anthem or to a Third Party Bidder (as defined below).

(b)    Upon the full execution of this Agreement, Anthem will remit to Seller a deposit in the amount of $25,000 ("Anthem Deposit"). Seller shall hold the Anthem Deposit in trust, and it shall not become property of the Bankruptcy Estate until the closing, and only if Anthem becomes the Final Purchaser. The Deposit shall be (i) applied to the Final Purchase Price if (A) the Bankruptcy Court approves Seller's sale of the Assets to Anthem as provided for in this Agreement and (B) Anthem becomes the Final Purchaser, (ii) promptly returned to Anthem in the event that a competing offer to acquire the Assets is approved by the Bankruptcy Court or the Bankruptcy Court otherwise disapproves the Sale or fails to approve the Sale, or (iii) surrendered to the Seller if Anthem becomes the Final Purchaser and the Bankruptcy Court approves the Sale to Anthem and Anthem nonetheless fails to complete the Sale within two business days following the finality of the order approving the Sale.

(c)    Promptly upon the full execution of this Agreement, Trustee shall file the appropriate pleadings with the Bankruptcy Court requesting a hearing regarding the authorization of the Sale in accordance with Section 363 (and/or any and all other applicable provisions) of the Bankruptcy Code (the "Sale Hearing"). The parties understand

8

and believe that any issues regarding the terms and conditions of the Sale will be determined by the Bankruptcy Court at or prior to the Sale Hearing. Upon notice from the Bankruptcy Court of the date, time and location of the Sale Hearing, Trustee shall advise any third parties ("Third Party Bidders") who wish to make a competing bid to acquire the Assets (each, a "Bid") to comply with the following requirements:

(i)     Third Party Bidders must submit Bids in the form of a written letter of intent (the "Letter of Intent") delivered to Trustee no later than 5 p.m. (EDT) on the third business day immediately prior to the Sale Hearing.

(ii)    The minimum Bid shall be $443,000.00 ("Minimum Bid").

(iii)   Each Letter of Intent must (A) include a closing date of the Sale that is no later than two business days following the Bankruptcy Court's entry of the order approving the Sale, and (B) exclude all due diligence conditions and financing contingencies.

(iv)    Any Third Party Bidder must attend the Sale Hearing or participate telephonically to the extent permitted by the Bankruptcy Court, and shall bring proof satisfactory to the Trustee of its financial ability to close the Sale as provided for herein.

(v)     At the commencement of the Sale Hearing, each Third Party Bidder (each, a "Bidder") shall tender to Seller's counsel or to another agent selected by the Bankruptcy Court (the "Deposit Agent") a bank check or certified check in an amount equal to 50% of the Minimum Bid (the "Deposit"), made payable to "S. Gregory Hays as Chapter 7 Trustee for the bankruptcy estate of Montell and Kristin Jordan."

(vi)    During the Sale Hearing, bidding for the Assets will be conducted in minimum incremental Bids of Fifteen Thousand Dollars ($15,000.00) unless Seller modifies the amount of the minimum incremental Bid during the Sale Hearing, which Seller may do at Seller's sole discretion.

(vii)   At the conclusion of the Sale Hearing, the Deposit tendered by the successful Bidder (the "Final Purchaser") will be placed in escrow by the Deposit Agent and all Deposits tendered by unsuccessful Bidders shall be returned thereto. The Deposit by the Final Purchaser will be applied toward the final purchase price determined at the Sale Hearing (the "Final Purchase Price").

(d)     If any Bidder other than Anthem becomes the Final Purchaser then, within three (3) business days of such determination, subject only to the approval of the Bankruptcy Court, which approval Trustee shall support if asked by the Bankruptcy Court, the Final Purchaser shall reimburse Anthem for all of Anthem's actual expenses

9

incurred in connection with this Agreement including, without limitation, all expenses related to its Due Diligence, the negotiation and documentation of any and all deal memos that preceded this Agreement, and the negotiation and documentation of this Agreement subject to a minimum aggregate amount of Twenty Thousand Dollars ($20,000) and a maximum aggregate amount of Thirty Thousand Dollars ($30,000) (collectively "Anthem's Expenses").  Anthem's expenses shall be reimbursed from the Final Purchase Price out of first dollars, i.e. in the first position vis-à-vis any creditors.

6.    Possible Reconveyance of Writer's Share.

If Anthem is the Final Purchaser and completes the Sale as provided for herein, then beginning on the date that is six (6) years after the date of the full execution of this Agreement, and continuing for a period of sixty (60) days, Anthem will negotiate in good faith regarding the possible sale and transfer of the prospective Writer's Share of Net Income derived from the Compositions (A) with Seller, or (B) if the Bankruptcy shall have then been closed, with HJM and/or MSM, or (C) if HJM and/or MSM does not then exist, with Writer.

7.    Assumption of Obligations.

(a)    Since all royalties concerning the Compositions, income or other earnings of any nature, kind or description in the Territory earned or paid after the Closing Date in respect to the Compositions shall be the property of Anthem, Anthem assumes Seller's obligations to account for and make payments of royalties to the applicable Asset Agreement Third Parties under each Asset Agreement, but only with respect to the income and earnings received by Anthem.

(b)    Anthem will assume and comply with all of Seller's obligations (including restrictions imposed on Seller) arising after the Closing Date under all of the Asset Agreements that have been provided to Anthem as of the Closing.

(c)    Except as otherwise set forth herein, Anthem will not assume, take subject to, or be liable in any manner whatsoever for any other liabilities or obligations of Seller.

8.    Closing.



The consummation of the transactions contemplated by this Agreement (the "Closing") shall take place on *Augu 31*, 2007 (the "Closing Date") at the offices of Manatt, Phelps & Phillips, LLP, 11355 W. Olympic Blvd., Los Angeles, CA 90064.

9.    Conditions to Anthem's Obligations.

The obligations of Anthem hereunder, including the obligation to pay the Final Purchase Price, are expressly made subject to the fulfillment of the following conditions:

10

(a)    Anthem's being reasonably satisfied on the Closing Date that all material representations and warranties of Seller hereunder were true and accurate on the date of this Agreement and continue to be so on the Closing Date.

(b)    Seller shall have performed and complied with all material covenants and agreements, and satisfied all conditions that Seller is required to perform, comply with, or satisfy before or on the Closing Date.

(c)    Anthem's receipt prior to or on the Closing Date of the following documents:

(i)    This Agreement, duly executed by Seller;

(ii)    Assignments of copyright with respect to the Compositions in the form attached hereto as Exhibit E executed and delivered by Seller and assignments of copyright with respect to the renewal term of the Compositions written prior to January 1, 1978, if any, from all potential heirs of the applicable writer(s) (the "Assignments");

(iii)    Notices, in the forms attached hereto as Exhibits F through J, advising the applicable performing rights societies, collection societies and other third parties in the Territory that Seller has sold and assigned to Anthem all of Seller's right, title and interest in the Territory in the Compositions, and all rights to royalties and other monies payable by such parties to copyright owners of musical compositions with respect to public performances, mechanical and/or electrical reproduction, sale and distribution of records, and other uses of the Compositions in the Territory from and after the Closing Date;

(iv)    Copies of the Approval Order;

(v)    True and correct copies of each Asset Agreement, collectively attached hereto as part of Exhibit D, provided that, if Seller is in possession of any originals thereof or, through reasonable efforts, can obtain any originals thereof, such originals shall be provided in addition to true and correct copies;

(vi)    Schedules setting forth in reasonable detail and to Anthem's satisfaction, the following:

(A)    All copyrights in any Compositions that are subject to reversion or that will enter the public domain within the next five (5) years, or that entered the public domain since the Seller's formation ("Schedule 10(c) (vii) (A)");

(B)    All analyses and other documents that relate in any manner to any renewal, reversionary or termination rights (or the exercise thereof) with respect to any Compositions ("Schedule 10(c)(vii)(B)");

11

of the matter ("Schedule 10(c)(vii)(F)");

(C)    Any notice that any party to any agreement granting rights to the Seller with respect to any Composition intends to cancel, rescind or claim breach of any such agreement ("Schedule 10(c)(vii)(C)");

(D)    All Liens on any of the Assets and all related material documentation (including, without limitation, security agreements, mortgages, guarantees, installment purchase agreements, financing leases, letters of credit, contingent obligations, indemnities, financing statements and sale-leaseback agreements) ("Schedule 10(c)(v.ii)(D)");

(E)    All material litigation, administrative proceedings, government investigations or inquiries and asserted or unasserted claims then involving the Seller setting out names and details of the parties, nature of the matter, summary of the history and current status of the claim, amount or remedy claimed, and assessment of the matter ("Schedule 10(c)(vii)(E)");

(F)    Any correspondence or documents relating to allegations by others of Seller's, HJM's, MSM's, Primary Writer's or any Secondary Writer's infringement of the proprietary rights of others, or allegations by the Seller of infringement of the proprietary rights of the seller by others ("Schedule 10(c)(vii)(F)");

(G)    All royalty claims and audits pending or threatened against or by the Seller, setting out parties involved, amounts claimed, current status and assessment of the audit ("Schedule 10(c)(vii)(G)" );

(H)    All currently effective judgments, orders, decrees, injunctions, stipulations or consent orders of or with any court or other federal, state, local or foreign governmental authority to which the seller or any of its assets or businesses are subject ("Schedule 10(c)(vii)(H)");

(I)    All agreements entered into within the past three (3) years to settle or compromise any proceeding pending or threatened against the Seller, Debtors, Primary Writer or any Secondary Writer, that has involved any obligation other than the payment of money, or for which the seller has any continuing obligation ("Schedule 10(c)(vii)(I)"); and

(J)    All Compositions to be excluded from the Sale, if any, and the reason for their exclusion ("Schedule 10(c)(vii)U)");

(vii)    Such other instruments and documents as Anthem reasonably deems necessary to effect the transactions contemplated hereby.

(d)    Seller shall comply with, and bear the cost of, any and all government requirements with respect to the transfers contemplated under this Agreement,

12

excluding recordation of the Assignments to Anthem to be executed and delivered under this Agreement.

10.    Conditions to Seller's Obligations.

The obligations of Seller hereunder, including the obligation to transfer the Compositions and other Assets, are expressly made subject to the fulfillment of the following conditions:

(a)    The execution of this Agreement by Anthem and delivery thereof to Seller.

(b)    The payment of the balance of the Final Purchase Price by certified check of Anthem or wire transfer of funds as Anthem shall determine.

(c)    Anthem shall have performed and complied with all material covenants and agreements, and satisfied all conditions that Anthem is required by this Agreement to perform, comply with, or satisfy before or on the Closing Date.

11.    Further Assurance.  Seller hereby agrees that the Seller shall forthwith upon Anthem's request therefor and at Anthem's reasonable expense, execute all such further documentation as Anthem may reasonably require in order to evidence or protect the rights granted to Anthem hereunder.

12.    Assignment and Licensing.  Anthem shall have the right to subpublish, license, assign or otherwise deal with its rights hereunder at its discretion without further reference to the Seller, subject to the rights granted to Anthem under the Asset Agreements.

13.    Tax. Where required by fiscal or other government authorities, Anthem shall be entitled to withhold tax against any payments due to Seller and pay the same to the aforesaid applicable authorities and any such tax withheld or paid will be deducted from the Final Purchase Price payable to Seller hereunder.

14.    Notification. Seller agrees that following the Closing Date, Seller will take all action reasonably required and requested by Anthem to enable Anthem to notify promptly in writing all licensees, agents, representatives, writers, copublishers, subpublishers or other persons or entities with whom or which agreements have been made respecting any of the Assets, advising them that the rights of Seller have been assigned to Anthem as provided herein.

15.    Additional Documents; Power of Attorney. Each party agrees to make, execute and deliver and to procure the making, execution and delivery of any further documents, instruments and writings which are necessary to carry out the terms and purposes of this Agreement.

13

16.    Commissions.  No commissions shall be due and payable under this Agreement.

17.    Notices. Any notice, request, demand, instruction, payment or communication given under or in connection with this Agreement shall be in writing and shall be delivered personally or sent by registered or certified mail, return receipt requested, postage prepaid and addressed as follows:

If to Anthem:

Anthem Music & Media Fund, LLC c/o Stephen Smith
449 S. Beverly Drive, Suite 300 Beverly Hills, CA 90212

With a copy to:

Manatt, Phelps & Phillips, LLP 11355 West Olympic Boulevard Los Angeles, California 90064 Attn: Charles J. Biederman, Esq.

If to Seller:

S. Gregory Hays as Chapter 7 Trustee for
the Bankruptcy Estate of Kristin and Montell Jordan Hays Financial Consulting, LLC
3343 Peachtree Road NE,
Suite 200
Atlanta, GA 30326

with a courtesy copy to:

M. Denise Dotson
Jones & Walden, LLC
21 Eighth Street
Atlanta, GA 30309

18.    Entire Agreement and Applicable Law; Counterparts.

(a)    This Agreement is the entire understanding of the parties, and all prior negotiations or alleged understandings are merged herein. This agreement shall be construed under the internal laws of the State of Georgia applicable to agreements to be performed wholly therein regardless of conflict of laws, principles.

(b)    This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one and the same agreement.

14

19.    <u>Severability</u>. If any provision or portion of this Agreement shall be declared or held to be invalid or unenforceable for any reason by a court of competent jurisdiction, there shall be deemed to be made such minor changes (and only such minor changes) in such provision or portions as are necessary to make it valid and enforceable. Such finding of invalidity or unenforceability of any provision or portion of this Agreement shall not affect the validity or enforceability of the other provisions or portions of this Agreement.

20.    <u>Survival of Warranties</u>. All representations, warranties, covenants and other agreements made by either party under this Agreement or pursuant hereto shall survive any independent investigation of their truth and accuracy by or on behalf of the other and shall be true and accurate as of, and shall further survive, the Closing Date, and remain in force and effect thereafter.

21.    <u>Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction to enforce the terms and conditions of this Agreement. The Parties consent to the jurisdiction of the Bankruptcy Court with respect to this Agreement and any litigation arising from or in connection with the Agreement shall be brought in the Bankruptcy Court.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date set forth above.

ANTHEM  MUSIC  &  MEDIA  FUND, LLC

By: _____
        An Authorized Signatory

_____
S. Gregory Hays, Chapter 7 Trustee for the  Bankruptcy  Estate  of  Montell  and Kristin Jordan

15

## Exhibit A – Composition List

| SONG | CAT. # | W/P | Designee | Affiliate | Split |
|------|--------|-----|----------|-----------|-------|
| 4 PLAY | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| 4 YOU | 360387182 | W | JORDAN MONTELL DU'SEAN | ASCAP | 6.20% |
| | 360387182 | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| 5 MINUTE MAN | | W | JORDAN MONTELL DU'SEAN | ASCAP | 35.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 35.00% |
| AIGHT | | W | JORDAN MONTELL DU'SEAN | ASCAP | 42.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 42.00% |
| ALL I NEED | | W | JORDAN MONTELL DU'SEAN | ASCAP | 6.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 3.00% |
| ALL NIGHT ALL RIGHT | 310412863 | W | JORDAN MONTELL DU'SEAN | ASCAP | 27.50% |
| | 310412863 | P | HUDSON JORDAN MUSIC | ASCAP | 2.50% |
| ALL NIGHT | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| AMEN | | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| AMNESIA | | W | JORDAN MONTELL DU'SEAN | ASCAP | 85.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 85.00% |
| ANYTHING AND EVERYTHING | 310401562 | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | 310401562 | P | HUDSON JORDAN MUSIC | ASCAP | 33.70% |

16

| Title | ID | Role | Name | Society | Percent |
|---|---|---|---|---|---|
| ARE YOU WITH ME | 310617937 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | 310617937 | P | FAMOUS MUSIC LLC | ASCAP | 50.00% |
| AT LAST AGAIN | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| BAD BOY | 320531206 | W | NIXON DANNY RAY | ASCAP | 50.00% |
| | 320531206 | W | DOVE DANIELS STACEY | BMI | 40.00% |
| | 320531206 | P | HUDSON JORDAN MUSIC | BMI | 40.00% |
| BEAUTY SHOP INTERLUDE | | W | | | |
| | | P | HUDSON-JORDAN MUSIC | ASCAP | TBD |
| BEEN THERE LIKE THAT | 320615170 | W | JORDAN MONTELL DU'SEAN | NS | 20.00% |
| | 320615170 | P | MONTELL JORDAN MUSIC | NS | 10.00% |
| BEGGIN' | | W | JORDAN MONTELL DU'SEAN | ASCAP | 28.40% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 28.40% |
| BIG MAN'S BACK | | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 45.00% |
| BODY AH | 320504049 | W | JORDAN MONTELL DU'SEAN | ASCAP | 27.50% |
| | 320504049 | P | MO'SWANG PUBLISHING | ASCAP | 10.00% |
| BOTTOM LINE | 320751166 | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | 320751166 | P | RUMINATING MUSIC | ASCAP | 45.00% |
| BOUNCE 2 THIS | 320456128 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | 320456128 | P | MO SWANG PUBLISHING | ASCAP | 50.00% |
| CALL ME UP | | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |

17

| Title | | | | | |
|---|---|---|---|---|---|
| CAN I? | | W | JORDAN MONTELL DU'SEAN | ASCAP | 100.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| CAN'T TAKE IT NO MORE | 332324337 | W | JORDAN MONTELL DU'SEAN | ASCAP | 100.00% |
| | 332324337 | P | FAMOUS MUSIC LLC | ASCAP | 50.00% |
| | 332324337 | P | MONTELL JORDAN MUSIC | ASCAP | 50.00% |
| CAN'T WAIT UNTIL TOMORROW | 330666972 | W | JORDAN MONTELL DU'SEAN | ASCAP | 5.00% |
| | 330666972 | P | MO' SWANG PUBLISHING | ASCAP | 2.50% |
| COME AND GET IT | | W | JORDAN MONTELL DU'SEAN | ASCAP | 100.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| COMIN' HOME | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | MO' SWANG PUBLISHING | ASCAP | 50.00% |
| CONFESSIONS | | W | JORDAN MONTELL DU'SEAN | ASCAP | 37.50% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 37.50% |
| COOL ON YOU | | W | JORDAN MONTELL DU'SEAN | ASCAP | 33.80% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 33.80% |
| COULDA WOULDA SHOULDA | 330663313 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 330663313 | P | FAMOUS MUSIC LLC | ASCAP | 25.00% |
| COULDN'T TAKE IT NO MORE | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| CRUSHIN' | | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 45.00% |
| DADDY S HOME | 340373699 | W | JORDAN MONTELL DU'SEAN | ASCAP | 60.00% |
| | 340373699 | P | MO SWANG PUBLISHING | ASCAP | 60.00% |

18

| Title | ID | W/P | Publisher | Society | Share |
|---|---|---|---|---|---|
| *DEAR JOHN* | 340517702 | W | | | |
| | 340517702 | P | HUDSON JORDAN MUSIC | ASCAP | 100.00% |
| *DENISE* | 341418031 | W | JORDAN MONTELL DU'SEAN | ASCAP | 33.74% |
| | 341418031 | P | HUDSON JORDAN MUSIC | UNKNOWN | 33.70% |
| *DON'T ASK YOUR BOY* | 340965433 | W | JORDAN MONTELL DU'SEAN | ASCAP | 30.00% |
| | 340965433 | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| *DON'T CALL ME* | 340427603 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | 340427603 | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| *DON'T GET IT TWISTED* | | W | JORDAN MONTELL DU'SEAN | ASCAP | 37.50% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 37.50% |
| *DON'T KEEP ME WAITING* | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | MO SWANG PUBLISHING | ASCAP | 50.00% |
| *DON'T KEEP RUNNING* | 340486415 | W | JORDAN MONTELL DU'SEAN | ASCAP | 55.00% |
| | 340486415 | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| *DON'T TEST ME* | | W | JORDAN MONTELL DU'SEAN | ASCAP | 3.30% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 3.30% |
| *DON'T THINK I'M A FOOL* | 340486611 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 340486611 | P | MONTELL JORDAN MUSIC | ASCAP | 12.50% |
| | 340486611 | P | FAMOUS MUSIC LLC | ASCAP | 12.50% |
| *DOWN ON MY KNEES* | 340374045 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | 340374045 | P | MO SWANG PUBLISHING | ASCAP | 50.00% |
| *DRAMA* | | W | JORDAN MONTELL DU'SEAN | ASCAP | 35.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 35.00% |

19

| | | | | | |
|---|---|---|---|---|---|
| DREAMIN' | 340682104 | W | JORDAN MONTELL DU'SEAN | ASCAP | 70.00% |
| | 340682104 | P | HUDSON JORDAN MUSIC | ASCAP | 100.00% |
| EVERYBODY GET DOWN | 350361352 | W | JORDAN MONTELL DU'SEAN | ASCAP | 40.00% |
| | 350361352 | P | MONTELL JORDAN MUSIC | ASCAP | 20.00% |
| EVERBODY'S WATCHING US | 350354842 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 350354842 | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| EVERYTHING IS GONNA BE ALRIGHT | | W | JORDAN MONTELL DU'SEAN | ASCAP | 2.50% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 2.50% |
| EYES ON ME | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| FALLING | 360338672 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 360338672 | P | HUDSON JORDAN MUSIC | ASCAP | 12.50% |
| FALLING IN LOVE | | W | JORDAN MONTELL DU'SEAN | ASCAP | 33.25% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 33.25% |
| FLESH 1 | | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| FLESH 2 | | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| FRIEND | 360798596 | W | JORDAN MONTELL DU'SEAN | ASCAP | 10.00% |
| | 360798596 | P | HUDSON JORDAN MUSIC | ASCAP | 80.00% |
| GOOD GOOD GIRL | 370477137 | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | 370477137 | P | HUDSON JORDAN MUSIC | ASCAP | 45.00% |
| GOTTA GET MY ROLL ON | 370271519 | W | JORDAN MONTELL DU'SEAN | ASCAP | 30.00% |

| Title | ID | Type | Name | Society | % |
|---|---|---|---|---|---|
| | 370271519 | P | MO SWANG PUBLISHING | NMASCAP | 30.00% |
| GOTTA HOLD OVER ME (EASY LOVER) | | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| GUILTY | | W | JORDAN MONTELL DU'SEAN | ASCAP | 100.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 100.00% |
| HERO | | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| HIM & YOU | | W | NIXON DANNY RAY | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| HOW MANY | 380514676 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 380514676 | P | HUDSON-JORDAN | ASCAP | 58.30% |
| HURTS TOO MUCH | 380496419 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | 380496419 | P | MONTELL JORDAN MUSIC | ASCAP | 50.00% |
| I AM L V | 390561383 | W | JORDAN MONTELL DU'SEAN | ASCAP | 65.00% |
| | 390561383 | P | MO SWANG PUBLISHING | ASCAP | 65.00% |
| I CANT BELIEVE | | W | JORDAN MONTELL DU'SEAN | ASCAP | 60.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 60.00% |
| I FIND SHELTER | | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| I HEARD | | W | JORDAN MONTELL DU'SEAN | ASCAP | 20.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 20.00% |
| I KNOW | | W | JORDAN MONTELL DU'SEAN | ASCAP | 30.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 30.00% |

21

| | | | | | |
|---|---|---|---|---|---|
| I LIKE | 390574753 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 390574753 | P | MO' SWANG PUBLISHING | ASCAP | 25.00% |
| I OWE YOU NOTHING | 390745756 | W | JORDAN MONTELL DU'SEAN | ASCAP | 15.00% |
| | 390745756 | P | HUDSON-JORDAN | ASCAP | 65.00% |
| I LL DO ANYTHING | 390555505 | W | JORDAN MONTELL DU'SEAN | ASCAP | 40.00% |
| | 390555505 | P | MO SWANG PUBLISHING | ASCAP | 40.00% |
| I SAY YES | 390603588 | W | JORDAN MONTELL DU'SEAN | ASCAP | 30.00% |
| | 390603588 | P | MO SWANG PUBLISHING | ASCAP | 30.00% |
| I WANNA | 390569509 | W | JORDAN MONTELL DU'SEAN | ASCAP | 100.00% |
| | 390569509 | P | MO SWANG PUBLISHING | ASCAP | 100.00% |
| I WANT TO SAY | | W | | | |
| | | P | HUDSON-JORDAN | NG ASCAP | 35.00% |
| IF I WERE YOU | | W | CRAWFORD/DANIELS | ASCAP | 5.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 5.00% |
| IF WE MAKE LOVE | | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| IF YOU LET ME | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| IF YOU'RE FEELING ME | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| I'LL DO ANYTHING | | W | JORDAN MONTELL DU'SEAN | ASCAP | 80.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 80.00% |

| Title | ID | Role | Name | Society | Share |
|---|---|---|---|---|---|
| I'LL GET BY | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| I'M GOING CRAZY | | W | JORDAN MONTELL DU'SEAN | ASCAP | 22.50% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 22.50% |
| IN MY BUSINESS | | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| INCOMPLETE | 390667064 | W | JORDAN MONTELL DU'SEAN | ASCAP | 40.00% |
| | 390667064 | W | KRISTIN HUDSON | NONMEMB | 5.00% |
| | 390667064 | P | HUDSON JORDAN MUSIC | ASCAP | 5.00% |
| INSTANT REPLAY | | W | JORDAN MONTELL DU'SEAN | ASCAP | 5.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 5.00% |
| INTERLUDE | | W | JORDAN MONTELL DU'SEAN | ASCAP | 38.75% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 38.75% |
| INTRODUCING SHAUNTA | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | MO SWANG PUBLISHING | ASCAP | 50.00% |
| IRRESISTABLE | 390610463 | W | JORDAN MONTELL DU'SEAN | ASCAP | 100.00% |
| | 390610463 | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| IT HURTS | | W | JORDAN MONTELL DU'SEAN | ASCAP | 20.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 20.00% |
| IT WAS PHYSICAL | | W | JORDAN MONTELL DU'SEAN | ASCAP | 35.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 35.00% |
| IT'S ALL ABOUT US | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |

23

| Title | ID | W/P | Writer/Publisher | Society | % |
|---|---|---|---|---|---|
| I YY YY | | W | | | |
| | | P | HUDSON-JORDAN MUSIC | ASCAP | TBD |
| IT S OVER | 390857206 | W | JORDAN MONTELL DU'SEAN | ASCAP | 28.40% |
| | 390857206 | P | MO' SWANG PUBLISHING | ASCAP | 28.40% |
| JACKIN' ME | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| JUNGLE GROOVE | | W | JORDAN MONTELL DU'SEAN | ASCAP | 100.00% |
| | | P | MO SWANG PUBLISHING | ASCAP | 100.00% |
| JUST GO AWAY | | W | JORDAN MONTELL DU'SEAN | ASCAP | 20.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 20.00% |
| JUST MOVE | 400255121 | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | 400255121 | P | HUDSON-JORDAN | ASCAP | 60.00% |
| KEEP IT HOT | 410158511 | W | JORDAN MONTELL DU'SEAN | NS | 50.00% |
| | 410158511 | P | HUDSON-JORDAN | NS | 50.00% |
| LAST NIGHT CAN WE MOVE ON | | W | JORDAN MONTELL DU'SEAN | ASCAP | 40.00% |
| | | W | KRISTIN HUDSON | ASCAP | 10.00% |
| | | P | MONTELL JORDAN MUSIC | ASCAP | 20.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 20.00% |
| LET ME BE THE ONE (COME RUNNIN') | | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| LET HIM GO | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON-JORDAN | ASCAP | 50.00% |
| LET ME BE | 420562869 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | 420562869 | P | MO' SWANG PUBLISHING | ASCAP | 50.00% |

24

| Title | Number | | Writer/Publisher | Society | Percent |
|---|---|---|---|---|---|
| LIKE ME | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| THE LONGEST NIGHT | | W | JORDAN MONTELL DU'SEAN | ASCAP | TBD |
| | | P | HUDSON JORDAN MUSIC | ASCAP | TBD |
| LOVE SHOULDN'T HURT NOBODY | 420538270 | W | WRITER UNKNOWN | NS | 60.00% |
| | 420538270 | P | PUBLISHER UNKNOWN | NS | 60.00% |
| MAKE UP SEX | | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 45.00% |
| MAKIN' ME HAPPY | 430618816 | W | WRITER UNKNOWN | NS | 75.00% |
| | 430618816 | P | PUBLISHER UNKNOWN | UNKNOWN | 75.00% |
| MIDNIGHT INTERLUDE | | W | JORDAN MONTELL DU'SEAN | ASCAP | 100.00% |
| | | P | MO' SWANG PUBLISHING | ASCAP | 100.00% |
| MINE MINE MINE | 430612054 | W | JORDAN MONTELL DU'SEAN | ASCAP | 30.00% |
| | 430612054 | P | FAMOUS MUSIC LLC | ASCAP | 30.00% |
| MJ V | 430724157 | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | 430724157 | P | FAMOUS MUSIC LLC | ASCAP | 45.00% |
| MONTELL'S ANTHEM | 430619119 | W | JORDAN MONTELL DU'SEAN | ASCAP | 47.50% |
| | 430619119 | P | FAMOUS MUSIC LLC | ASCAP | 47.50% |
| NEVER ALONE | 440237781 | W | JORDAN MONTELL DU'SEAN | ASCAP | 35.00% |
| | 440237781 | P | HUDSON JORDAN MUSIC | ASCAP | 17.50% |
| NO COMPRENDE | | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 45.00% |

| Title | ID | Type | Writer/Publisher | Society | Share |
|---|---|---|---|---|---|
| NO NEED TO LIE | 440303459 | W | JORDAN MONTELL DU'SEAN HUDSON JORDAN MUSIC/FAMOUS | ASCAP | 75.00% |
| | 440303459 | P | MUS | NMASCAP | 37.50% |
| | 440303459 | P | FAMOUS MUSIC LLC | ASCAP | 37.50% |
| NO NEED TO LIE (RAP VERSION) | 440303351 | W | JORDAN MONTELL DU'SEAN HUDSON JORDAN MUSIC/FAMOUS | ASCAP | 75.00% |
| | 440303351 | P | MUS | NMASCAP | 45.00% |
| | 440303351 | P | FAMOUS MUSIC LLC | ASCAP | 45.00% |
| NO STANDING AROUND | 440348714 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | 440348714 | P | FAMOUS | ASCAP | 50.00% |
| NOBODY'S BODY | | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| ON THE RISE | 450381687 | W | JORDAN MONTELL DU'SEAN | ASCAP | 38.00% |
| | 450381687 | P | HUDSON-JORDAN | ASCAP | 60.00% |
| ONLY YOU | | W | JORDAN MONTELL DU'SEAN | ASCAP | TBD |
| | | P | HUDSON JORDAN MUSIC | ASCAP | TBD |
| OVER AND OVER | | W | JORDAN MONTELL DU'SEAN | ASCAP | 22.50% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 22.50% |
| PAYBACK | | W | JORDAN MONTELL DU'SEAN | ASCAP | 10.00% |
| | | P | MO' SWANG PUBLISHING | ASCAP | 10.00% |
| PRAYER CHANGES EVERYTHING | 460438562 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 460438562 | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| QUESTIONS | | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 45.00% |

| Title | Number | W/P | Writer/Publisher | Society | % |
|---|---|---|---|---|---|
| REAL MAN | | W | JORDAN MONTELL DU'SEAN | ASCAP | 30% |
| | | P | HUDSON-JORDAN MUSIC | ASCAP | 70% |
| SAME SCRIPT DIFFERENT CAST | 491101901 | W | JORDAN MONTELL DU'SEAN | BMI | 5.00% |
| | 491101901 | P | HUDSON JORDAN MUSIC | ASCAP | 2.50% |
| SEE YA ON SATURDAY | 491036152 | W | WRITER UNKNOWN | NS | 65.00% |
| | 491036152 | P | PUBLISHER UNKNOWN | UNKNOWN | 30.00% |
| SEEING ANYONE? | 491036134 | W | JORDAN MONTELL DU'SEAN | ASCAP | 36.70% |
| | | | HUDSON  JORDAN  MUSIC/FAMOUS | | |
| | 491036134 | P | MUS | NMASCAP | 18.30% |
| SHE WANTS IT ALL | 491313012 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | 491313012 | P | MONTELL JORDAN MUSIC | ASCAP | 25.00% |
| SHOULD I? | | W | | | |
| | | P | HUDSON-JORDAN | ASCAP | 50% |
| SOMETHIN 4 DA HONEYZ | 490827077 | W | JORDAN MONTELL DU'SEAN | ASCAP | 30.00% |
| | 490827077 | P | MO SWANG PUBLISHING | ASCAP | 30.00% |
| SQUEAKING IN THE BED INTERLUDE | | W | | | |
| | | P | HUDSON-JORDAN MUSIC | ASCAP | 16.6% |
| SUPA STAR | 491395023 | W | JORDAN MONTELL DU'SEAN | ASCAP | 27.00% |
| | | P | HUDSON-JORDAN MUSIC | ASCAP | 27.00% |
| SUPA STAR - JORJA BLACK REMI | 491532204 | W | JORDAN MONTELL DU'SEAN | ASCAP | 22.50% |
| SUPASTAR | 492900153 | W | JORDAN MONTELL DU'SEAN | ASCAP | 27.00% |
| | 492900153 | P | WIXEN MUSIC PUBLISHING | UNKNOWN | 27.00% |
| SUPERLOVER MAN | 490973927 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |

| | | | | | |
|---|---|---|---|---|---|
| | 490973927 | P | HUDSON JORDAN MUSIC | ASCAP | 12.50% |
| SYMPTOMS OF A HEARTBREAK | | W | JORDAN MONTELL DU'SEAN | ASCAP | 15% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 33% |
| TA DA | 500698740 | W | JORDAN MONTELL DU'SEAN | BMI | 25.00% |
| | 500698740 | P | HUDSON JORDAN MUSIC | ASCAP | 7.50% |
| TALKIN' LOVE | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| TASTY | 500811812 | W | JORDAN MONTELL DU'SEAN | ASCAP | 40.00% |
| | 500811812 | P | FAMOUS MUSIC LLC | ASCAP | 40.00% |
| THAT'S NOT LOVE | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| THAT'S WHAT YOU ARE | 502591851 | W | JORDAN MONTELL DU'SEAN | ASCAP | 16.66% |
| | 502591851 | P | HUDSON JORDAN MUSIC | ASCAP | 33.30% |
| THE BIG MAN'S BACK | | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 45.00% |
| THE INTRO | | W | JORDAN MONTELL DU'SEAN | ASCAP | 16.66% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 16.66% |
| THE ONLY TIME | | W | JORDAN MONTELL DU'SEAN | ASCAP | 33.80% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 33.80% |
| THE RAIN | 500811750 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | 500811750 | P | FAMOUS MUSIC LLC | ASCAP | 50.00% |
| THE RULES OF LOVE | | W | JORDAN MONTELL DU'SEAN | ASCAP | 20.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 20.00% |

| | | | | | |
|---|---|---|---|---|---|
| THE YOU IN ME | 500811796 | W | JORDAN MONTELL DU'SEAN | ASCAP | 40.00% |
| | 500811796 | P | FAMOUS MUSIC LLC | ASCAP | 40.00% |
| THIS IS HOW WE DO IT | 500524829 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 500524829 | P | MO SWANG PUBLISHING | NMASCAP | 25.00% |
| THIS IS HOW WE DO IT (RISHI | 501030217 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 501030217 | P | MO' SWANG PUBLISHING | ASCAP | 25.00% |
| TRICKS ON MY MIND | 500549848 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 500549848 | P | HUDSON JORDAN MUSIC | ASCAP | 12.50% |
| THREE'S COMPANY | | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| TRUE (A GIRL LIKE YOU) | 501488313 | W | JORDAN MONTELL DU'SEAN | ASCAP | 11.30% |
| | 501488313 | P | HUDSON JORDAN MUSIC | ASCAP | 15.00% |
| | 502176612 | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
| | 502176612 | P | HUDSON JORDAN MUSIC | NS | 45.00% |
| UNLONELY | 510153765 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 510153765 | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| WALKING ON SUNSHINE | 530652367 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
| | 530652367 | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| WE CAN WORK IT OUT | 530559754 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
| | 530559754 | P | FAMOUS | ASCAP | 100.00% |
| WE CANT BE FRIENDS | | W | JIMMY RUSSELL | | 10.00% |
| | | P | HUDSON JORDAN MUSIC | | 10.00% |
| WE RIDE ON DEM THANGS | | W | JORDAN MONTELL DU'SEAN | ASCAP | 42.00% |

29

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  | P | HUDSON JORDAN MUSIC | ASCAP | 42.00% |
| WHAT ARE WE GONNA DO |  | W | JORDAN MONTELL DU'SEAN | ASCAP | 35.00% |
|  |  | P | HUDSON JORDAN MUSIC | ASCAP | 17.50% |
| WHAT IF I NEVER |  | W | JORDAN MONTELL DU'SEAN | ASCAP | 45.00% |
|  |  | P | HUDSON JORDAN MUSIC | ASCAP | 45.00% |
| WHAT'S ON TONIGHT | 530429199 | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
|  | 530429199 | P | HUDSON JORDAN MUSIC | ASCAP | 12.50% |
| WHAT THE DEAL | 530597687 | W |  |  |  |
|  | 530597687 | P | HUDSON JORDAN MUSIC | ASCAP | 2.50% |
| WHEEL OF FORTUNE |  | W | DANNY NIXON | ASCAP | 50.00% |
|  |  | P | HUDSON JORDAN | ASCAP | 50.00% |
| WHEN YOU GET HOME (DO NOT CLAIM) |  | W | JORDAN MONTELL DU'SEAN | ASCAP | TBD |
|  |  | P | HUDSON JORDAN MUSIC | ASCAP | TBD |
| WHERE WERE YOU |  | W | JORDAN MONTELL DU'SEAN | ASCAP | 25.00% |
|  |  | P | HUDSON JORDAN MUSIC | ASCAP | 25.00% |
| WHY CANT WE |  | W | JORDAN MONTELL DU'SEAN | ASCAP | TBD |
|  |  | P | HUDSON JORDAN MUSIC | ASCAP | TBD |
| WONT STOP |  | W | JORDAN MONTELL DU'SEAN | ASCAP | 12.50% |
|  |  | P | HUDSON JORDAN MUSIC | ASCAP | 12.50% |
| WORN OUT WELCOME |  | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
|  |  | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| WOULD YOU WANNA KNOW |  | W | JORDAN MONTELL DU'SEAN | ASCAP | 27.50% |

|  |  |  |  |  |
|---|---|---|---|---|
|  | P | HUDSON JORDAN MUSIC | ASCAP | 27.50% |
| YEARNIN | W | JORDAN MONTELL DU'SEAN | ASCAP | 33.33% |
|  | P | HUDSON JORDAN MUSIC | ASCAP | 33.33% |
| YES | W | JORDAN MONTELL DU'SEAN | ASCAP | 41.66% |
|  | P | HUDSON JORDAN MUSIC | ASCAP | 41.66% |
| YOU CALLED OUT HER NAME | W | JORDAN MONTELL DU'SEAN | ASCAP | 9.50% |
|  | P | HUDSON JORDAN MUSIC | ASCAP | 9.50% |
| YOU DON'T KNOW | 550230570 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50% |
|  | 550230570 | P | HUDSON-JORDAN MUSIC | ASCAP | 25% |

| YOU MUST HAVE BEEN | 550248767 | W | JORDAN MONTELL DU'SEAN | ASCAP | 35.00% |
|---|---|---|---|---|---|
|  | 550248767 | W | KRISTIN HUDSON | BMI | 5.00% |
|  | 550248767 | P | FAMOUS MUSIC LLC | ASCAP | 17.50% |
|  | 550248767 | P | MONTELL JORDAN MUSIC | ASCAP | 17.50% |
| YOU NEED A MAN | 550196724 | W | JORDAN MONTELL DU'SEAN | ASCAP | 30.00% |
|  | 550196724 | P | HUDSON JORDAN MUSIC | ASCAP | 50.00% |
| YOU'RE LEAVING ME | 550206552 | W | JORDAN MONTELL DU'SEAN | ASCAP | 50.00% |
|  |  |  | HUDSON   JORDAN   MUSIC/FAMOUS |  |  |
|  | 550206552 | P | MUS | NMASCAP | 25.00% |
|  | 550206552 | P | FAMOUS MUSIC LLC | ASCAP | 25.00% |
| YOU'RE THE ONE |  | W | JORDAN MONTELL DU'SEAN | ASCAP | 75.00% |
|  |  | P | HUDSON JORDAN MUSIC | ASCAP | 75.00% |
| YOU'RE THE RIGHT ONE | 550237377 | W | JORDAN MONTELL DU'SEAN | ASCAP | 35.00% |
|  | 550237377 | P | FAMOUS MUSIC LLC | ASCAP | 35.00% |

31

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 04-78994-JEM |
| | ) | |
| MONTELL D. JORDAN and | ) | |
| KRISTEN JORDAN, | ) | CHAPTER 7 |
| | ) | |
| Debtors. | ) | JUDGE JAMES MASSEY |
| | ) | |

## CERTIFICATE OF SERVICE

I do hereby certify that on the _30_ day of January, 2008, I served the within and foregoing **Report of Sale** by depositing a true copy of same in the United States Mail with adequate postage affixed thereon, properly addressed to:

Office of the United States Trustee
362 Richard Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303

David L. Miller
Law Offices of David L. Miller
The Galleria – Suite 960
300 Galleria Parkway, N.W.
Atlanta, GA 30339

S. Gregory Hays
Chapter 7 Trustee

Hays Financial Consulting, LLC
3343 Peachtree Street, N.E.
Suite 200
Atlanta, Georgia 30326-1420
(404) 926-0060